(September 4, 2012)

■ Matter of Verizon New England Inc., Appellant, v IDT Domestic Telecom, Inc., Respondent. [950 NYS2d 375]—

Order and judgment (one paper), Supreme Court, New York County (O. Peter Sherwood, J.), entered September 24, 2010, which dismissed the petition seeking, inter alia, that respondent be directed to turn over to petitioner all monies respondent paid to Global Naps Networks, Inc. after April 2, 2009, unanimously affirmed, without costs.

In this proceeding, judgment creditor Verizon New England Inc., seeks to enforce a restraining notice against a third party, IDT Domestic Telecom, Inc. pursuant to article 52 of the CPLR, on monies paid by IDT to judgment debtor, Global, a telecommunications vendor. IDT purchased voice-over-Internet termination services for its customers from Global.

On January 29, 2009, a judgment was entered in Massachusetts in favor of Verizon against Global in the sum of $57,716,714. The judgment was domesticated in New York on March 6, 2009. Verizon sought to enforce its judgment by serving a restraining notice and information subpoena upon Global and its business partners, including IDT, which makes prepayments to Global for telecommunications services needed the following month. No written contract existed between IDT and Global, and either party could terminate their "at will" relationship at any time without notice. Verizon alleged that documentation provided by IDT established that as of service of the restraining notice and through November 2009, $992,000 had been improperly paid to Global, as these sums were subject to restraint under the restraining notice.

At issue in this turnover proceeding is whether payments made by respondent IDT to the judgment debtor Global constitute debt or property within the meaning of CPLR 5201 and, therefore, are subject to levy by petitioner/judgment creditor Verizon. Verizon's contention that IDT's ongoing business relationship with Global meant that IDT had property of Global in its possession at the time it received the restraining notice is unavailing. At best, this was a month-to-month agreement with prepaid services. This Court recently held in *Verizon New England Inc. v Transcom Enhanced Servs., Inc.* (98 AD3d 203 [2012]) that a similar prepaid arrangement entered into between Verizon and a different vendor was not attachable property pursuant to CPLR 5201.

In *Transcom*, Verizon, the judgment creditor, sought to enforce a restraining notice against a third party pursuant to article 52 of the CPLR, on monies paid by Transcom to judgment debtor, Global. Like IDT here, Transcom purchased voice-over-Internet termination services for its customers from Global. Transcom ordered telecommunications services from Verizon on a weekly basis by weekly prepayment.

In *Transcom (supra)*, this Court rejected Verizon's argument and found that the agreement between Global and Transcom dispensed with any contractual obligations or "bundle of rights" that could be considered attachable property (98 AD3d at 207). This Court reasoned that Global did not have any rights under the prepayment because "there is simply no obligation for Transcom to purchase services from [Global]." Rather, "[t]his . . . was a situation where [Global's] performance depended on Transcom's prepayment for services in any given week" and "therefore involved intangibles that may never ripen into a significant property right as where they depend on a contingency that may never occur" (*Transcom*, 98 AD3d at 210 [internal quotation marks omitted]). Thus, Global had no right to payment that it could assign or that could be attached by its judgment creditors.

In this case, the prepayment arrangement between Verizon and IDT is indistinguishable from the prepayment arrangement in *Transcom* that this Court found was not subject to attachment. The arrangement was a month-to-month agreement with prepaid services. Like Transcom, IDT had no continuing obligation or commitment to purchase the services offered by Global. Global did not have any rights under the prepayment because "there [was] simply no obligation for [IDT] to purchase services from [Global]" (98 AD3d at 209). Thus, "[Global] ha[d] no right to payment that it could assign or that could be attached by its

judgment creditors" (98 AD3d at 209). In light of this economic reality, there is no property pursuant to CPLR 5201 (b) or debt pursuant to CPLR 5201 (a) that would be subject to a restraining notice under CPLR 5222 (b).

Equally unavailing is Verizon's argument that IDT possessed a restrainable debt owed to Global on April 2, 2009, when it was served with the restraining notice, as Global did not cash IDT's prepayment for April 2009 services, mailed overnight on March 27, 2009, until April 8, 2009 (*see* UCC 3-409 [1]). IDT owed no debt to Global and Global had no property interest in any prepayment until it fulfilled its obligations and provided a month of telecommunications services to IDT (*cf. Conde v Anton Adj. Co.*, 133 Misc 2d 998 [1986]). That Global did not cash the check for eight days does not alter the fundamental contingent, prepayment nature of the parties' relationship.

In view of the foregoing, we need not address whether Verizon was entitled to CPLR article 52 enforcement proceedings. Concur—Saxe, J.P., Catterson, Moskowitz, Acosta and Renwick, JJ.